UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BETHANNE M. KRAFFT,

     Plaintiff,

v.                                                              Case No. 3:25cv827-MW-HTC

FRANK BISIGNANO,
Commissioner of the Social
Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Bethanne M. Krafft's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.[1]   After reviewing the administrative record, the parties' written submissions, and the relevant law, the undersigned finds the Commissioner's decision should be AFFIRMED.

---

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  Thus, regardless of whether a referenced statute or regulation herein addresses DIB or SSI, only, the legal principle at issue applies equally to both claims.

## I.    BACKGROUND

### A.    Procedural History

Krafft previously worked several jobs, including as a lifeguard, dog sitter, and cashier. T. 31, 376.[2] Her applications for DIB and SSI, filed on July 2, 2021, alleged she became disabled on March 1, 2021, when she was 50 years old, due to heart conditions, a stroke, blood clots, incontinence, memory loss, depression, carpal tunnel, and hypertension. T. 289, 296. The Commissioner denied Krafft's applications initially and on reconsideration. T. 129-48. After holding a hearing on July 12, 2023, and a supplemental hearing on March 29, 2024, Administrative Law Judge ("ALJ") Andrew Dixon III determined Krafft was not disabled under the Act. T. 14-39. On April 10, 2025, the Appeals Council denied Krafft's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-6. On June 13, 2025, Krafft filed a complaint with this Court seeking judicial review of the Commissioner's decision. Doc. 1.

### B.    The ALJ's Findings

The Act defines disability as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be considered disabled, an individual's

---

[2] References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:25cv827-MW-HTC

impairments must be so severe that she is not only unable to perform her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. *Id*. § 423(d)(2)(A).

Pursuant to Social Security regulations, the ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; if not, then (2) whether the claimant has a severe impairment or combination of impairments; if so, then (3) whether the impairment or combination of impairments, meets or equals the severity of the specified impairments in the Listing of Impairments; if not, then (4) whether the claimant can perform any of her past relevant work in light of her RFC; and if not, then (5) whether there are significant numbers of jobs in the national economy the claimant can perform given her RFC, age, education, and work experience. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, the ALJ found at step one that Krafft had not engaged in substantial gainful activity since the alleged onset date of March 1, 2021. *See* T. 20. At step two, the ALJ found Krafft has the following severe impairments:

> … status-post remote cerebrovascular accident (CVA) in 2015 with other smaller transient ischemic attacks (TIA's) in 2017 and 2018 with residual expressive dysphasia and cognitive/memory deficits; migraines; mixed anxiety and depressive disorder; hypertension; carotid arthrosclerosis; and degenerative disc disease of [t]he lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

T. 20.

At step three, the ALJ determined Krafft did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. T. 20. The ALJ determined that Krafft is moderately limited in understanding, remembering, or applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and mildly limited in adapting or managing herself. T. 20-21.

At step four, the ALJ determined Krafft could not perform any past relevant work (T. 31) but has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and, as relevant to the issues on appeal,

> is limited to understanding, remembering and carrying out simple instructions as well as performing simple tasks due to concentration deficits defined as the ability to apply commonsense understanding to carry out uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. She can interact with coworkers, but only through occasional conversations and interpersonal interactions; however, she can accept instructions and respond appropriately to supervisors frequently. She can occasionally interact with public but should not engage in any extensive transactions or negotiations.[3]

T. 23.

---

[3] The RFC also includes physical limitations, but none are relevant to the issues on appeal.

Case No. 3:25cv827-MW-HTC

Considering Krafft's age, education, work experience, and RFC, and relying on the testimony of a vocational expert ("VE"),[4] the ALJ determined at step five that Krafft could perform work as a router or electrical assembler, jobs which exist in significant numbers in the national economy.  T. 32.  Thus, the ALJ concluded that Krafft was not disabled from the alleged onset date of March 1, 2021, through the date of the ALJ's decision, April 22, 2024, under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act.  T. 33.

## II.   STANDARD OF REVIEW

Federal courts "review the [Commissioner's] decision with deference to the factual findings and close scrutiny of the legal conclusions." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *accord Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir. 1986). The Commissioner's factual findings are conclusive if supported by "substantial evidence," 42 U.S.C. § 405(g), which is such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence."  *Martin*, 894 F.2d at 1529.

---

[4] While there were two oral hearings, at which there were two different VEs, only the VE at the first oral hearing on July 12, 2023, testified.  *See* T. of Oral Hearing dated 7/12/2023 (T. 47-79); T. of Oral Hearing dated 3/29/2024 (T. 40-46).

Courts, however, review *de novo* the Commissioner's conclusions of law.  *Id.* "The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Cornelius*, 936 F.2d at 1145–46).

## III.    DISCUSSION

Krafft raises three (3) issues on appeal.  Doc. 11.  First, Krafft argues the ALJ cherry-picked which parts of the state agency consultants' medical opinions he found to be persuasive and those he disregarded without explaining his basis for doing so. Second, Krafft argues the ALJ failed to give "good reasons" for not giving Dr. Harper's medical opinion substantial weight.  Third, Krafft argues the ALJ's RFC is not supported by substantial evidence because (1) the ALJ did not consider Krafft's non-severe impairments; (2) the ALJ did not consider her ongoing limitations; (3) the ALJ failed to consider the limitations on Krafft's activities of daily living; and (4) the ALJ did not consider her inability to pay for additional treatment.  For the reasons discussed below, the undersigned finds none of these arguments warrant a reversal or remand of the Commissioner's decision denying SSI and DIB benefits.

A.     **The ALJ Provided Adequate Explanations for Adopting Some but Not All of the State Agency Consultants' Medical Opinions**

1.     The State Agency Reviewing Psychologists' Medical Assessments.

On January 9, 2022, Brian McIntyre, Ph.D., a state agency reviewing psychologist, completed a medical assessment on Krafft at the initial level of disability review.  T. 80-86, 91-98.  Dr. McIntyre's assessment included a mental residual functional capacity ("MRFC") evaluation.  T. 85-86, 96-98.  As relevant to the issues on appeal, Dr. McIntyre identified Krafft as being "moderately limited" in the ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  T. 86, 97.  In the narrative section of the form, Dr. McIntyre explained that Krafft "may have limitations with understanding and remembering detailed instructions," "difficulty carrying out detailed instructions and maintain[ing] concentration for extended periods of time," and "may struggle to accept instructions and respond appropriately to criticism from supervisors."  T. 86, 97.

On March 22, 2023, Frances Martinez, Ph.D., a state agency reviewing psychiatrist, performed a medical assessment on Krafft at the reconsideration level of disability review.  T. 100-109.  Dr. Martinez's assessment also included an MRFC

Case No. 3:25cv827-MW-HTC

evaluation. T. 108-109. Dr. Martinez's findings and narrative are identical to those contained in Dr. McIntyre's evaluation. *Id.*

      2.      <u>The ALJ's Discussion of the State Agency Psychologists' Opinions.</u>

For claims filed on or after March 27, 2017, the ALJ must consider medical sources and articulate how he determined the persuasiveness of the different sources. 20 C.F.R. § 404.1520c(a)–(b); *see Winschel*, 631 F.3d at 1178 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."). The ALJ no longer needs to defer or give specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must articulate how persuasive he finds all the medical opinions and all prior administrative medical findings in the case record based on the factors listed in § 404.1520c(c)(1)–(5): supportability, consistency, relationship with the claimant, specialization, and familiarity with the Social Security disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a)–(c). The most important factors are supportability and consistency. *Id.* § 404.1520c(a).

Here, the ALJ discussed both factors as it relates to the psychologists' opinions. The ALJ explained that the opinions are "supported by clinical examination and testing," and discussed that objective data in his decision. T. 28.

Case No. 3:25cv827-MW-HTC

He also found the opinions to be "largely consistent with the record as a whole." *Id.* Thus, the ALJ found the opinions to be "largely persuasive." *Id.*

Krafft argues the ALJ's RFC is not supported by substantial evidence because he fails to explain the "gap" between finding Drs. McIntyre and Martinez's opinions to be "largely persuasive," and disregarding their determinations that Krafft had a "moderate limitation" in accepting instructions, responding to criticism from supervisors, and getting along with coworkers and peers. Doc. 11 at 10. She further faults the ALJ for failing to explain why he was giving her the "benefit of the doubt" in finding she was more limited in understanding and remembering than the state agency psychologists determined. *Id.* at 12.

As an initial matter, Krafft misreads the psychologists' opinions. As the Commissioner argues, while the psychologists marked Krafft as having some moderate limitations in the question-and-answer section of the disability determination form, the psychologists did not note any such limitations in the narrative, which is where "the actual mental residual functional capacity assessment is recorded." *See* T. 85. Instead, as stated above, in the narrative, the psychologists found Krafft to have "limitations with understanding and remembering detailed instructions," "difficulty carrying out detailed instructions and maintain[ing] concentration for extended periods of time," and to "struggle to accept instructions and respond appropriately to criticism from supervisors." *Id.* at 86.

The Social Security Administration's Programs Operations Manual System (POMS) clarifies that the answers are only part of a worksheet that "does not constitute the [doctors' actual] RFC assessment."  POMS DI § 24510.060(B)(2). "Checking the box 'Moderately Limited' means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation."  *See id.* § 24510.063(B)(2).  After checking the boxes as an "aid," *id.* § 24510.060(B)(2), a doctor is then required to detail his actual RFC assessment.  *See id.* § 24510.060(B)(4); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49–50 (11th Cir. 2012).  Thus, "the portion of the state agency form where the consultants simply rate [Krafft]'s impairments is not the consultants' actual RFC assessment, which the form states is found 'in the narrative discussion(s).'"  *See Miller v. Comm'r of Soc. Sec.,* 2018 WL 4658499, at *12–13 (M.D. Fla. Aug. 15, 2018), *report and recommendation adopted sub nom. Miller v. Berryhill*, 2018 WL 4635651 (M.D. Fla. Sept. 27, 2018).

Regardless, the ALJ interpreted the psychologists' opinions as finding Krafft to be mildly limited in understanding, remembering, or applying information, as well as in adapting and managing oneself, and moderately limited in interacting with others and in concentrating, persisting, or maintaining pace.  T. 28.  The ALJ explained, however, that he did not agree with these limitations.

Just because the ALJ found the opinions to be largely persuasive does not mean the ALJ's RFC assessment had to account for all the limitations in those opinions. *See Julie H. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 16706716, at *4 (N.D. Ga. Sept. 16, 2022) ("[N]either the regulations nor binding case law required the ALJ's RFC assessment to account for all the limitations in Dr. Allsopp's opinion solely because he found it persuasive") (citing 20 C.F.R. § 416.920c); *see also Misla v. Comm'r of Soc. Sec.*, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive."); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (holding that an ALJ is not required to address every aspect of an opinion or every piece of evidence in the record). Instead, an ALJ may reject parts of a medical opinion if he explains his reasons for doing so. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

Here, contrary to Krafft's arguments, the ALJ did not reject the limitations without explanation. The ALJ thoroughly discussed the evidence in the medical record and explained his reasoning for finding both greater and lesser limitations than those found by the state agency psychologists. The ALJ's RFC is based on all relevant medical evidence. *See* 20 C.F.R. § 416.945(a)(3); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's

medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.").

First, the ALJ explained, "there is simply insufficient evidence in the record to support marked memory, concentration or social limitations during the relevant period" because "the record documents [showed] mostly normal mental-status findings at numerous appointments with improvements in symptomatology with prescribed medication and treatment, … even when accounting for and giving the claimant the benefit of the doubt with respect to her reported residual non-exertional symptoms secondary to CVA/TIA."   T. 25.   He also noted Krafft "engages in numerous activities on a daily basis that demonstrate the ability to engage in the basic mental demands of competitive work."   T. 28-29.   The ALJ identified these activities to include preparing meals, shopping, completing household chores, communicating with others via phone, text, and computer, managing her own finances, paying bills, and living independently.   T. 21.

Second, the ALJ explained he found Krafft to be more limited in understanding, remembering, or applying information "based on her mental health treatment records, psychological consultative examination, comprehensive neuropsychological evaluation, and [her] testimony."   T. 28.

Furthermore, the ALJ's RFC accounted for many of the limitations identified by the psychologists.  For example, to address the psychologists' determination that

Case No. 3:25cv827-MW-HTC

Krafft has "limitations with understanding and remembering detailed instructions" and "difficulty carrying out detailed instructions and maintain[ing] concentration for extended periods of time," the ALJ limited Krafft to "understanding, remembering, and carrying out simple instructions" and performing simple tasks involving "uninvolved written or oral instructions." T. 23. And to address the psychologists' determination that Krafft "struggle[s] to accept instructions and respond appropriately to criticism from supervisors," the ALJ limited Krafft to dealing with "problems involving a few concrete variables in or from standardized situations" and to interacting with coworkers "only through occasional conversation and interpersonal interactions," and to only occasional interaction with the public. *Id.*

In sum, the ALJ committed no error when considering the opinions of the state agency psychologists in formulating the RFC; he sufficiently explained why he believed limitations greater or lesser[5] than those espoused were appropriate, and substantial evidence supports the RFC.

**B.      The ALJ Gave Good Reasons for Not Assigning Substantial Weight to Dr. Harper's opinion.**

In January, February, and April 2024, Krafft was seen by Cayleigh Benny Harper, Ph.D., for a comprehensive neurological evaluation. T. 859-66. According

---

[5] "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *See Baker o/b/o Baker v. Berryhill*, 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018).

to Dr. Harper, Krafft suffers from "multiple areas of cognitive impairment, most being in the mild to moderate range," including "impairments in basic attention, alternating attention, mental math, impulse control, problem-solving and mental flexibility, vocabulary, general fund of knowledge, item naming, and complex visual-spatial construction."  T. 866.  Dr. Harper made several recommendations, including improving compliance with medications, limiting driving and cooking because of cognitive deficits, and having another evaluation in a year.  T. 866.

The ALJ found Dr. Harper's opinion to be "somewhat persuasive."  *See* T. 30. The ALJ explained that Dr. Harper did not have the benefit of reviewing all the evidence received at the hearing level, and thus, Dr. Harper's opinions are not "reflective of the totality of the evidence."  T. 30.  Krafft argues, nonetheless, the ALJ did not provide "good reasons" for not assigning substantial weight to Dr. Harper's opinions.  Doc. 11 at 17.  Specifically, Krafft argues the ALJ failed to address or analyze "abnormal" findings in Dr. Harper's evaluation, such as Krafft's anxious mood and spontaneous speech with some word-finding difficulty; her mental status examination showing problems with attention and difficulty thinking quickly; and her problems with short-term memory.  *Id.* at 16.  Additionally, Krafft disagrees with the ALJ's reasoning that Dr. Harper's opinion is "inconsistent" with Krafft's significant work history since her CVA/TIA and argues no such inconsistency exists.

As discussed above, under the existing regulations, an ALJ must articulate how persuasive he finds the medical opinions based on the factors listed in 20 C.F.R. § 404.1520c(c)(1)–(5), with supportability and consistency being the most important factors. Here, the ALJ sufficiently articulated the reasons for finding Dr. Harper's opinions to be "somewhat persuasive." Contrary to Krafft's arguments, the ALJ explained that Dr. Harper's evaluation regarding Krafft's "processing speed, visual, auditory short-term memory, and verbal fluency" is "not corroborated by other sources in the record" and is "inconsistent" with Krafft's return to work after her CVA/TIA. T. 28-29.

Moreover, while Dr. Harper may have found Krafft exhibited more than mild to moderate impairment in those areas, Dr. Harper did not impose any limitations on Krafft's ability to work, and Krafft has pointed to nothing in Dr. Harper's opinions that would require more limitations than what is already contained in the ALJ's RFC. *See Sims v. Comm'r of Soc. Sec.,* 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). In sum, the ALJ's discussion of Dr. Harper's evaluation adequately explained the ALJ's reasoning for finding Dr. Harper's opinion to be somewhat persuasive. *See Ellis v. Kijikazi*, 2022 WL 2677477, at *4 (N.D. Ala. July 11, 2022) (finding ALJ's explanation that

medical opinion was consistent with other record evidence, but failed to provide a statement of what claimant can do despite her impairments, rendered the opinion somewhat persuasive to be sufficient).  And while Krafft may disagree with the ALJ's reasoning, that is not a basis for remand.  *See Bloodsworth*, 703 F.2d at 1239 (explaining that a court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary").

**C.    Substantial Evidence Supports the ALJ's RFC.**

Finally, Krafft argues the ALJ's RFC assessment is not supported by substantial evidence because the ALJ (1) did not take into consideration her non-severe impairments; (2) did not consider the limitations on her activities of daily living; (3) failed to account for medical evidence demonstrating her ongoing limitations; and (4) failed to consider Krafft's inability to afford additional treatment. The undersigned considered these arguments and, for the reasons discussed below, finds none warrant remand because the ALJ's RFC is supported by substantial evidence.

### 1.    Consideration of non-severe impairments

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Buckwalter*, 5 F.4th at 1320–21; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "Although the ALJ is not required to specifically refer to every piece of evidence in the record," *Watkins v.*

*Comm'r of Soc. Sec.*, 457 F. App'x 868, 871 (11th Cir. 2012), he must "provide enough detail to [assure] the Court that the ALJ actually received and considered the evidence in the record and made a decision based on the entire record." *Lemire v. Comm'r of Soc. Sec.*, 2015 WL 4887682, at *6 (M.D. Fla. Aug. 17, 2015) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)); *see also* 20 C.F.R. §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3) (noting "it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors … in [the] case record").

Krafft argues the ALJ did not consider her non-severe impairments, but she does not specify which non-severe impairments were left unconsidered and why any such omission would warrant remand.  Regardless, the ALJ did consider Krafft's non-severe impairments and found that neither the carpal tunnel syndrome nor the lumbar radiculopathy were supported by objective findings.  T. 20.  As for the other non-severe symptoms, such as reflux, hyperlipidemia, insomnia, general sickness, and benign prostate hyperplasia, the ALJ determined those symptoms "have improved with medication and conservative treatment and have had such a minimal effect on the claimant that they are not expected to interfere with the claimant's ability to work." *Id.*

The ALJ's conclusions are supported by substantial evidence.  The imaging results from May 3, 2022, do not show any major abnormalities in Krafft's right

shoulder, left hip, or right knee. T. 714-15. The imaging did show degenerative disc disease in the lumbar spine, which the ALJ found was a severe impairment. T. 14, 20. The medical records also show Krafft's symptoms were frequently well-controlled with medication. *See* T. 575 (noting in February 2021 she reported her "general health [as] good"); T. 700 (noting in June 2022 that her range of motion and shoulder strength had progressed well); T. 649 (noting in September 2022 "overall she seems to be doing pretty well" and blood pressure and headache symptoms "are well controlled" with medication). The records also note that Krafft had gotten a new motorcycle in 2022 and "would like to start riding more frequently." T. 665.

### 2. Limitations to activities of daily living

Krafft argues that the ALJ failed to consider the limitations on daily activities she identified in her hearing testimony. *See* Doc. 21 at 11. As examples, she argues she testified about numbness in her hand when brushing her teeth, numbness in her arms when holding onto a steering wheel, aches in her back, daily pain in her chest particularly when her blood pressure rises, irritability, anxiety in social situations, and trouble being around people. Doc. 11 at 21-22. Krafft argues the ALJ failed to consider "any" of this evidence. Krafft is wrong.

First, as discussed above, the ALJ's RFC includes limitations to accommodate Krafft's social anxiety, including limiting Krafft to "occasional conversations and interpersonal interactions" with co-workers and the public. T. 23. Second, despite

Case No. 3:25cv827-MW-HTC

Krafft's testimony at the hearing, as the ALJ noted, she engages in a host of daily activities that the records show she is capable of, including preparing meals for herself and her boyfriend, shopping, driving herself to doctors' appointments, handling her finances, and communicating with others via phone. T. 21. She also goes out to restaurants and interacts with family and other members of the community at large. *Id.*

Also, despite Krafft's self-reported ongoing mental health limitations, her objective medical records showed "mostly normal mental-status findings at numerous appointments." T. 25. And despite Krafft's testimony as to numbness, chest pain, and back aches (*see* T. 63), the objective medical record documented "mostly normal objective musculoskeletal and neurological findings at numerous appointment[s], including the Agency physical consultative assessment with mostly normal strength, range of motion, gait, coordination, and other physical findings during the relevant period." T. 31.

Krafft does not identify any portion of the ALJ's decision that is factually incorrect; instead, she identifies other parts of the records that she believes support her assertions as to her disability. However, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604. Here, Krafft has not met her

burden.  *See Castillo v. Bisignano*, No. 25-20962-CIV, 2026 WL 244659, at *10 (S.D. Fla. Jan. 14, 2026) ("[D]espite Plaintiff's arguments to the contrary, it appears to the Court that it is *Plaintiff* who is attempting to 'cherry-pick' the evidence that is supportive of her position"), *report and recommendation adopted,* 2026 WL 242719 (S.D. Fla. Jan. 29, 2026).

### 3.  Ongoing limitations

Krafft also takes issue with the ALJ's determination that despite her complaints of ongoing mental health limitations, the medical records showed mostly normal mental-status findings.  Doc. 11 at 23.  Krafft argues that in reaching this conclusion, the ALJ failed to consider the "plethora of medical evidence demonstrating Krafft's ongoing limitations," and cites as examples Krafft's testimony that her medications do not seem to help and she experiences nausea when she gets migraines.  *Id.*  Krafft, however, fails to identify the "ongoing limitations" or how any such limitations undermine the ALJ's RFC determination.

Regardless, while Krafft contends the ALJ is cherry-picking what evidence he wants to rely on in the record, the Court finds it is Krafft that is doing so.  The records as a whole simply do not support a finding that Krafft suffers from any ongoing mental health limitations.  To the contrary, although Krafft reported daily headaches in 2020, by February 2021, Krafft reported "she has been doing well until she ran out of Topamax for her chronic daily headaches," and that the medication was

effective in alleviating her symptoms. T. 575. She also reported being able to control her anxiety and depression with medication. *Id.* In November 2021, Krafft reported exercising at a moderate level daily (T. 559), experiencing no symptoms arising from her anxiety or depression (T. 559-60), and not experiencing any depression, anxiety, or insomnia (T. 560). The physical examination showed she was "healthy-appearing, well-nourished, and well developed," ambulating normally, and exhibiting good judgment, normal mood and affect, and normal memory. T. 560. In December 2021, Krafft reported having "normal activity level" and no nausea. T. 597. Her physical examination showed normal mental status. *Id.* She was instructed to exercise at a moderate level for at least 2 ½ hours a week. *Id.* at 598. In September 2022, Krafft reported "doing pretty well" overall, and "no issues in terms of her chronic daily headaches on Topamax." *Id.* at 652. The provider also noted that Krafft's "anxiety and depression symptoms seem to be improved." *Id.* at 653.

In January 2023, Krafft reported that her anxiety and depression are "for the most part doing relatively well." T. 646. Krafft also reported having difficulty finding words and struggling with her memory. *Id.* The provider recommended a neurology consult, additional imaging, and a follow-up in 3 months. *Id.* at 647. An evaluation of memory impairment was performed on Krafft in August 2023. T. 740. During that evaluation, Krafft reported her memory had improved and Topamax works "very well" for her migraines. T. 740. Her motor exam was normal, sensation

was normal, and gait was normal.  T. 741.  The provider noted she had a recent MRI of her brain, which showed no acute findings.  *Id.*  Indeed, as discussed above, Dr. Harper's 2024 evaluation recommended a follow-up evaluation in a year, compliance with medication, limited driving and cooking, and otherwise imposed no other limitations on Krafft.  Simply put, the medical records support the ALJ's determination that despite Krafft's complaints, her longitudinal medical records do not support any ongoing limitations.

### 4. Conservative treatment and Krafft's financial difficulties

Finally, Krafft takes issue with the ALJ's description of Krafft's treatments as "conservative," and argues the ALJ failed to consider Krafft's "inability to afford treatment."  *See* Doc. 11 at 24.  However, as the Commissioner notes, the only time the ALJ describes Krafft's treatment as conservative is regarding the impairments the ALJ found to be non-severe.  *See* Doc. 17 at 18; *see also, e.g.,* T. 653 (suggesting arthritic complaints should be managed with Tylenol); T. 694 (noting expected improvement with physical therapy).

Moreover, while the record suggests Krafft may have delayed some treatments because of insurance issues (*see, e.g.,* T. 671, 676) and may have declined to try psychological counseling due to cost (T. 61), there is no indication Krafft declined other treatment because of an inability to pay.  To the contrary, the record shows Krafft visited various doctors multiple times per year (*see, e.g.*, T. 714, 825, 784)

and regularly self-reported that cost was not a barrier to seeing a doctor.  *See, e.g.,* T. 783 (answering "no" to the question, "In the last 12 months, was there a time when you needed to see a doctor but could not because of cost?").  And, while Dr. Harper recommended Krafft improve medical compliance, she did not relate that lack of compliance to financial needs.  Instead, she recommended that Krafft's boyfriend manage Krafft's medication.  T. 866.

## IV.   CONCLUSION

Because the ALJ's RFC determination is supported by substantial evidence, the undersigned finds the Commissioner's decision should be affirmed.

Accordingly, it is RECOMMENDED that:

1.     The decision of the Commissioner be AFFIRMED.

2.     The clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 29th day of June, 2026.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.